IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEAN DELAVENTURA, on behalf of himself and
all others similarly situated

           Plaintiff,

v.

COLUMBIA ACORN TRUST, COLUMBIA
FUNDS TRUST I, COLUMBIA FUNDS TRUST
II, COLUMBIA FUNDS TRUST III, COLUMBIA
FUNDS TRUST IV, COLUMBIA FUNDS TRUST
V, COLUMBIA FUNDS TRUST VI, COLUMBIA
FUNDS TRUST VII, COLUMBIA FUNDS
TRUST VIII, COLUMBIA FUNDS TRUST XI,

           Defendants.

Case No. _____

MAGISTRATE JUDGE _____

RECEIPT # 63683
AMOUNT $ ____
SUMMONS ISSUED N/A
LOCAL RULE 4.1 ____
WAIVER FORM ____
MCF ISSUED____
BY DPTY. CLK. ____
DATE 4/21/05

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, the Defendants[1] file this Notice of

Removal. This notice removes the civil action *Dean Delaventura v. Columbia Acorn Trust, et*

*al.*, C.A. No. 05-1093 (the "Civil Action") filed in the Massachusetts Suffolk County Superior

Court.

As grounds for this removal, the Defendants state as follows:

1.     The Civil Action was filed on March 21, 2005. On or about that date, Plaintiff

mailed a copy of the complaint, together with a letter making a demand on Defendants pursuant

to M.G.L.c. 93A, to the Defendants by certified mail, return receipt requested. A copy of the

---

[1]     The Defendants include Columbia Acorn Trust, Columbia Funds Trust I, Columbia
Funds Trust II, Columbia Funds Trust III, Columbia Funds Trust IV, Columbia Funds
Trust V, Columbia Funds Trust VI, Columbia Funds Trust VII, Columbia Funds Trust
VIII, Columbia Funds Trust XI (collectively, the "Defendants").

Complaint and demand letter are attached as Exhibit A. The Complaint has not been served on any Defendant.

     2.     Defendants timely file this notice of removal within the thirty days set forth in 28 U.S.C. § 1446(b).

I.     GROUNDS FOR REMOVAL

     3.     This Court has federal jurisdiction over this Civil Action pursuant to 28 U.S.C. § 1331 on two independent grounds.

     A.     SLUSA PREEMPTION

     4.     This matter raises a federal question under the Securities Litigation Uniform Standard Act of 1998 ("SLUSA"). Under SLUSA, federal courts have exclusive jurisdiction over certain "covered class actions" involving a covered security. 15 U.S.C. § 78bb(f)(2). Plaintiff's state court action is a "covered class action" involving a "covered security."

     5.     A "covered class action" may meet either of the following two requirements: (a) "damages are sought on behalf of more than 50 persons or prospective class members" and common questions of law or fact predominate over questions affecting individual persons or class members; or (b) "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated." 15 U.S.C. § 78bb(f)(5)(B)(I) & (II). This action meets each of these requirements. For example, Plaintiff expressly seeks damages on behalf of more than 50 class members. (Complaint, ¶ 10). Plaintiff also purports to represent a putative class of "all others similarly situated." And, Plaintiff alleges that questions of law and fact common to the class predominate over any questions affecting only individual class members. (Complaint, ¶¶ 9-14). For these and other reasons, this action is a covered class action.

6.    This action concerns a "covered security" within the meaning of 15 U.S.C. §

78bb(f)(1). Interests of shareholders in Defendants' Funds are registered with the Securities and

Exchange Commission (the "SEC") as securities under the Securities Act of 1933, and the

Defendants' Funds referred to in the Complaint are registered with the SEC as investment

companies under the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.* As such

Plaintiff's Class B shares are covered securities. Kircher v. Putnam Funds Trust, et al., 2005 WL

757255, *2 (7th Cir. Apr. 5, 2005).

7.    This action is "based upon the statutory or common law of any State." See 15

U.S.C. § 77p(b). The Plaintiff alleges a claim under state law resulting allegedly from unfair or

deceptive conduct. (Complaint, ¶¶ 28-32).

8.    SLUSA requires removal of a "covered class action based upon the statutory or

common law of any State or subdivision thereof…alleging --

(A)    a misrepresentation or omission of a material fact in
connection with the purchase or sale of a covered security;
or

(B)    that the defendant used or employed any manipulative or
deceptive device or contrivance in connection with the
purchase or sale of a covered security."

15 U.S.C. § 78bb(f)(1).

9.    Plaintiff's claims are thus subject to mandatory removal under SLUSA.

Plaintiff's claims concern Defendants' alleged misrepresentation or omissions and/or

employment of a manipulative or deceptive device or contrivance in connection with the

purchase or sale of a covered security. Specifically, the allegations relate to market timing and

valuation, and allege that Defendants' conduct was dishonest, unfair and deceptive. See, e.g.,

Complaint, ¶¶ 17, 19 ("Columbia represented and warranted that it would continue to conduct its

business at the same level of integrity"), ¶¶ 20, 27 (Defendants allegedly "dishonest"), ¶ 31(c)

(defendants allegedly "engag[ed] in unfair and deceptive trade practices"). The alleged unfair and deceptive trade practices can only relate to the Funds' statements or omissions in their sales prospectuses regarding market timing. Plaintiff alleges no other unfair or deceptive trade practices. "Artful pleading," in which plaintiffs "disguise[s] a federal claim as a claim arising under state law," cannot defeat removal pursuant to SLUSA -- rather, courts may "look beyond the complaint" to ascertain the true nature of Plaintiff's claim. See Korinsky v. Salomon Smith Barney, Inc., No. 01 Civ. 6085 (SWK), 2002 WL 27775, *2 (S.D.N.Y. Jan. 10, 2002) (denying motion to remand and granting motion to dismiss complaint pursuant to SLUSA).

10.     Plaintiff's claims are "in connection with" the purchase or sale of a covered security. In order for a plaintiff's claims to be "in connection with" the purchase or sale of a security for SLUSA purposes, a plaintiff need only allege an injury as "a result of deceptive practices 'touching' its purchase or sale of securities." Araujo v. John Hancock Life Ins. Co., 206 F.Supp.2d 377, 383 (E.D.N.Y. 2002) (citation omitted). This is precisely what the Complaint alleges. First, Plaintiff here is complaining about misrepresentations in connection with the imposition of a deferred *sales* charge on "Class Members who wish to *sell* their shares," who allegedly "have been and will be required to pay a significant CDSC charge" when they sell their shares. Complaint ¶ 26. That sales charge becomes applicable when a Class Member purchases shares in the subject mutual funds, and is triggered and must be paid when those shares are sold within a specific time period. Id. ¶ 1.

11.     In addition, Plaintiff's claims are based on allegations that misrepresentations occurred during the class period in connection with the purchase of those shares. (See, e.g., Complaint ¶¶ 1, 2, 3, 7, 19, 20, 29); see also Dabit v. Merrill Lynch, 395 F.3d 25, 46 (2d. Cir.

2005) (SLUSA applies when stock may have been purchased by any plaintiff after alleged misrepresentations were made).

12.     Plaintiff's description of Class Members as those who "held" shares is irrelevant since the deferred sales charge that Plaintiff challenges becomes applicable upon a Class Member's *purchase* of shares and becomes payable upon the *sale* of those shares. See Complaint ¶ 9; Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1345 (11th Cir. 2002) ("[T]hat class members purchase *and then retain* their Growth Fund shares does not necessarily add anything to the basic claim of purchasing, because all investors, by definition, hold their shares for at least some time after purchase") (emphasis in original); v. Kircher v. Putnam Funds Trust, et al., 2005 WL 757255, *5 (7th Cir. Apr. 5, 2005) ("[P]laintiffs' effort to define non-purchaser-non-seller classes is designed to evade PSLRA in order to litigate a securities class action in state court in the hope that a local judge or jury may produce an idiosyncratic award. It is the very sory of maneuver that SLUSA is designed to prevent."); Cape Ann Investors LLC v. Lepone, 296 F.Supp.2d 4 (D.Mass. 2003).

13.     Plaintiff also alleges that market timing improperly allowed certain investors "to take advantage of market fluctuations" through "short-term trading" practices. (See Complaint, ¶ 17). Claims relating to such trades are, as well, made in connection with the purchase or sale of securities. See Kircher, at *5 (claims based upon alleged misrepresentations and manipulative conduct relating to market timing are in connection with purchase and sale of securities).

B.     PREEMPTION UNDER THE INVESTMENT COMPANY ACT

14.     Plaintiff's claims arise under the Investment Company Act of 1940 ("1940 Act"). That act preempts any state law claims of the nature present here. See 15 U.S.C. § 80a-50.

15.     For example, the Plaintiffs' state law claim raise questions of fair value, and all such questions are governed by the 1940 Act. See 15 U.S.C. § 80a-22. Plaintiff alleges, in part,

that the value of his shares was diluted by market timing; this will necessarily entail a determination of Net Asset Value under the fair value rules and procedures of the 1940 Act. Complaint ¶¶ 15-17.  The fair value rules and procedures set forth in §§ 2(a)(41) and 22 lie at the heart of the 1940 Act, and are closely regulated by the SEC.  When "Congress…so completely pre-empt[s] a particular area th[at] any civil complaint raising that select group of claims is necessarily federal in character," Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987), a state law action can be removed, regardless of how the action is plead.  Thus, the Seventh Circuit recently announced that Sections 201(b) and 202(a) of the Communications Act completely preempt state law challenges to the validity of the terms and conditions of a telephone service agreement.  See Boomer v. AT&T Corp., 309 F.3d 404, 417-18 (7th Cir. 2002). Congress' intent to completely preempt state law in this area, the Court found, was evidenced by the goal of the Communications Act to provide uniform terms and conditions of service; in these circumstances, "a state law challenge to the validity of the terms and conditions of a telephone service agreement would result in the application of fifty bodies of law, and this would inevitably lead to customers in different state receiving different terms and conditions."  Id. at 418.

16.    Sections (2)(a)(41) and 22 of the 1940 Act are no different.  Its legislative history makes clear that the problem of dilution was both significant and national, that the problem was an important reason for enactment of the 1940 Act, and that the provisions at issue are necessary to protect less sophisticated parties.  See Investment Trusts and Investment Companies: Hearing before the Senate Subcommittee on Securities and Exchange of the Banking and Currency Committee, 76th Congress, 121-58 (1940) (statement of David Schenker, Chief Counsel, Securities and Exchange Commission, Investment Trust Study).  Section 22 grants power to a federal agency -- the SEC -- to "make rules and regulations" to enforce the section.  See 15

U.S.C. § 80a-22(c). The SEC has been very active in the arena of regulating the determination of the value of investment company shares, and in the enforcement of its rules, including rules respecting the determination of fair value. See, e.g., SEC v. Heartland Advisors, et al., SEC Litigation Release No 18505 (December 12, 2003). The net asset value requirement must completely preempt state law as to all questions which can impact on the issue of fair value. Otherwise, both investors and investment companies will be subject to inconsistent rules across jurisdictions and the SEC's authority to create uniform standards of valuation would be destroyed.

17.     The Plaintiff plainly cannot avoid federal jurisdiction through the "artful pleading" by which he attempts to disguise his federal action in the garb of state law claims. See BIW Deceived, et al. v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America, 132 F.3d 824, 829 (1st Cir. 1997) (plaintiff's state law claims dependant upon an interpretation of a collective bargaining agreement are preempted by federal law). For example, Plaintiff alleges that Defendants "had an implied contractual duty to perform the investment advisor and management services in good faith." (Complaint, ¶ 30). This claim certainly intrudes upon areas governed by the 1940 Act, including the "forward pricing rules" that relate to the determination of a fund's "NAV", or "Net Asset Value". See Rule 22c-1 of the General Rules and Regulations under the 1940 Act (the "1940 Act Regulations"). The method for calculating subaccount values for purposes of such sales and purchases is also set forth and governed by the 1940 Act and the 1940 Act Regulations. See, e.g., 15 U.S.C. § 80a-22(c); 17 C.F.R. §§ 270.2a-4, 270.22c-1, 270.22e-2. This alleged duty arises solely under Rule 2a-4 promulgated under the 1940 Act, although the Complaint itself does not specifically identify the source of the duty. Such claims, as well as Plaintiff's other claims relating to the calculation of

net asset value of the funds are 1940 Act claims, notwithstanding Plaintiff's attempt to couch

them under state law. A plaintiff cannot avoid federal court by cloaking a federal question in

state law claims. See BIW Deceived, 132 F.3d at 829. Removal based upon the federal

jurisdiction provided by the 1940 Act is thus proper. See 28 U.S.C. § 1331.

II.    VENUE

18.    Venue is proper in this District under 28 U.S.C. § 1441(a) and 15 U.S.C. §

78bb(f)(2), "Removal of Covered Class Actions," added by SLUSA, because the removed action

has been pending in this district. Defendants reserve the right to seek the transfer of this matter

to another district.

III.    NOTICE

19.    Defendants will promptly file a copy of this Notice of Removal with the Clerk of

the Superior Court Department of the Trial Court, Suffolk County, Commonwealth of

Massachusetts, where this action has been pending, and will serve such notice on all adverse

parties.

20.    Pursuant to Local Rule 81.1, certified or attested copies of all records,

proceedings, and docket entries in the Civil Action will be filed with this Court within 30 days.

21.    By filing this Notice of Removal, the Defendants are not making a general

appearance and are not waiving their right to raise any defenses and/or grounds for dismissal

pursuant to Fed.R.Civ.P. 12, or otherwise, including without limitation inadequacy of service of

process or personal jurisdiction.

WHEREFORE, the Defendants respectfully request that the Civil Action be removed to the United States District Court for the District of Massachusetts on the foregoing grounds.

Dated: April 20, 2005

_Brian E. Pastuszenski_

Brian E. Pastuszenski, BBO # 391030
Kevin P. McGrath, BBO # 550123
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000
*Attorneys for Defendant Columbia Acorn Trust*

_Giselle Joffre_

Brien T. O'Connor, BBO # 546767
Giselle J. Joffre, BBO # 658047
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000
*Attorney for Defendants Columbia Funds Trust I,
Columbia Funds Trust II, Columbia Funds Trust
III, Columbia Funds Trust IV, Columbia Funds
Trust V, Columbia Funds Trust VI, Columbia Funds
Trust VII, Columbia Funds Trust VIII, Columbia
Funds Trust XI*

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                SUPERIOR COURT DEPARTMENT
                                            OF THE TRIAL COURT

----------------------------------------------------------------X
DEAN DELAVENTURA, on behalf of himself and      :    Case No.
all others similarly situated                   :
                                                :
                        Plaintiff,              :    CLASS ACTION
                                                :    COMPLAINT
          v.                                    :
                                                :    **JURY TRIAL DEMANDED**
COLUMBIA ACORN TRUST, COLUMBIA FUNDS            :
TRUST I, COLUMBIA FUNDS TRUST II,               :
COLUMBIA FUNDS TRUST III, COLUMBIA              :    **05 - 1093**
FUNDS TRUST IV, COLUMBIA FUNDS TRUST V,         :
COLUMBIA FUNDS TRUST VI, COLUMBIA               :
FUNDS TRUST VII, COLUMBIA FUNDS TRUST           :
VIII, COLUMBIA FUNDS TRUST XI,                  :
                                                :
                        Defendants.             :
----------------------------------------------------------------X

        Plaintiff, by his undersigned attorneys, on personal knowledge as to himself and his

acts and on information and belief as to all other matters, based upon an investigation by Plaintiff's

counsel, alleges as follows:

## INTRODUCTION

        1. This is a class action brought on behalf plaintiff and all other holders of Class B

shares of Columbia mutual funds as of February 24, 2004 which are still subject to a Contingent

Deferred Sales Charge ("CDSC") being assessed in the event they redeem such shares prior to the

expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on

or after February 24, 2004. When a Class B shareholder withdraws money from a particular

Columbia Fund by redeeming shares of that fund, a percentage of the proceeds is charged by

Columbia before the balance is delivered to the shareholder. Columbia calls this penalty a CDSC.

00004381.WPD ; 1

Typically, the CDSC charge is 5% for withdrawals in the first year after purchase, 4% in the second, 3% in the third or fourth, 2% in the fifth, and 1% in the sixth.

2. This claim is based upon the fact that Columbia through certain of its employees (and agents) engaged in misconduct constituting a breach of contract with holders of Class B shares in a Columbia Fund. Those holders of Class B shares who wish to cease doing business with the Fund may only do so by paying a penalty. In fact, such holders should be given the opportunity to withdraw money from Columbia Funds without a penalty because an implied term of the agreement pursuant to which the investments were made was that Columbia would conduct itself with a high degree of integrity and the fact that Columbia did not so conduct itself amounts to a breach of contract, so that Class B shareholders should have the opportunity to withdraw their funds without penalty. Defendants' misconduct is also a breach of their obligation to act fairly and in good faith with respect to their contract, as well as a breach of their fiduciary duties of care, loyalty, and good faith.

3. The following facts and circumstances alleged below constitute a breach of the agreement, and the covenants of good faith and fair dealing, between defendants and class members in that defendants' actions give rise to serious doubts concerning the integrity of defendants. In particular, (a) the payment of $140 million in disgorgement and penalties; (b) the specificity of the wrongdoing alleged by the governmental agencies; (c) the substantial redemptions by shareholders following the charges being made public; (d) the adverse reporting in the media; (e) the plethora of actions, including class actions, commenced against defendants; (f) the increased outflow of shareholder funds from the defendants, and the decreased inflow of funds to defendants, giving rise to possible adverse consequences for class members, i.e. among other things, increased administrative costs and forced sales of stock to raise money for redemptions.

4. Class members should not be forced to perform under an agreement which has been breached by defendants. In particular, class members should be free to decide whether, under the circumstances, they wish to remain shareholders without the disincentive of a penalty if they decide to redeem their shares and shareholders who were penalized for redeeming their shares after the above charges were made public should be refunded the amount of the penalty.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the Defendants Columbia as they have their headquarters and do substantial business in the Commonwealth of Massachusetts.

6. Venue is proper as Defendants Columbia have their principal place of business in Boston, Suffolk County, Massachusetts. The Defendants have, at all times material to this complaint, conducted business in this Commonwealth related to the events giving rise to the claims asserted in this complaint and are registered to do business in the Commonwealth of Massachusetts. Many of the witnesses and a substantial number of the documents and sources of proof are located in Massachusetts.

## PARTIES

7. Plaintiff Dean Delaventura was a holder of 126.582 shares of Columbia Growth Stock Fund B shares issued by Columbia as of February 24, 2004.

8. Defendants Columbia Acorn Trust, Columbia Funds Trust I, Columbia Funds Trust II, Columbia Funds Trust III, Columbia Funds Trust IV, Columbia Funds Trust V, Columbia Funds Trust VI, Columbia Funds Trust VII, Columbia Funds Trust VIII, Columbia Funds Trust XI (collectively "Columbia") are open-end registered investment companies organized under the laws of the Commonwealth of Massachusetts as business trusts. Columbia maintains its principal executive offices at One Financial Center, Boston, Suffolk County, MA

00004381.WPD ; 1                                   3

02111. Columbia is the registrant under the Securities Act of 1933 and Investment Company Act of 1940. Columbia has approximately 140 mutual funds which have as many as seven classes of shares (A, B, C, D, G, T and Z) for each fund. Columbia funds were the subject of improper market timing, including the Columbia Growth Stock Fund.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

9. Plaintiff brings this action as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of himself and other members of the Class, consisting of all holders of Class B Shares of Columbia mutual funds as of February 24, 2004 which are still subject to a CDSC being assessed in the event they redeem such shares prior to the expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after February 24, 2004.

10. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff, and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class. Record owners and members of the Class may be identified from records maintained by Columbia and may be notified of the pendency of this action by mail, using the form of notice similar to that used in class actions.

11. Plaintiff's claims are typical of the claims of the putative Class members. Specifically, Plaintiff claims that Defendants' conduct injured Plaintiff and Class members alike by assessing CDSC fees to all Class members who redeem their shares on or after February 24, 2004.

12. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. The common questions of law and fact include:

(a) Whether defendants has breached its fiduciary duty to Plaintiff and the Class;

(b) Whether defendants has breached its duties of good faith and fair dealing; and

(c) Whether defendants' conduct constitutes a breach of contract.

13. Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class action litigation to vigorously prosecute this action on behalf of the putative class members.

14. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to seek redress individual for the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FACTS

**BACKGROUND**

15. A Mutual Fund is a fund that is managed by an investment company that manages the money of its shareholders.

16. Mutual funds are priced once a day, at 4:00 p.m. EST. The price, known as the Net Asset Value ("NAV"), generally reflects the closing prices of the securities that comprise a given fund's portfolio, plus the value of any cash that the fund manager maintains for the fund, divided by the number of outstanding shares.



17.  Market timing is an investment strategy that involves the short-term trading of securities to take advantage of market fluctuations. Market timing is often employed where one can predict with reasonable certainty the effect on a particular security. Market timing works to the detriment of long-term shareholders in a number of ways: (a) market timing dilutes the value of the fund by allowing the timer to siphon short term profits from what is otherwise a long-term investment vehicle; (b) market timing may add to the transactional costs of the fund because of more frequent purchases and sales; (c) the fund may realize taxable capital gains at an undesirable time; and (d) market timing may result in managers having to sell stock into a falling market. Where money is not invested in the fund, but is kept in cash, then the fund's shareholders are deprived of the advantages of being fully invested in an appreciating stock market.

## THE CLASS B SHARES

18.  The Columbia Funds claims that the interests of fund shareholders their highest priority. They had a reputation for good faith and fair dealing, and for strict adherence to their duties as a fiduciary: loyalty, candor, and due care which eschews any sort of unfair business practices.

19.  Columbia contracted, agreed, represented and warranted that it would continue to conduct its business at the same level of integrity while purchasers of B shares held those shares.

20.  Columbia violated its agreement by engaging in various forms of misconduct, including market timing, which indicated, among other things, that the interests of the fund shareholders was not the highest priority, that they did not act in good faith, that they engaged in unfair business practices, and that their integrity was seriously compromised. Under these circumstances, holders of B shares should be allowed to redeem their shares without penalty.

00004381.WPD : 1

6

21. Columbia has been subject to a series of investigations by federal and state regulators.

## Governmental Action

22. On February 24, 2004, the Attorney General of the State of New York announced the filing of civil charges in New York Supreme Court (the "NY State Action") against Columbia "for engaging in a massive mutual fund timing scheme."

23. On February 24, 2004, the SEC announced that it had filed a civil fraud complaint in the United States District Court for the District of Massachusetts (the "SEC Action") against Columbia.

24. On February 9, 2005, the SEC filed an Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order settling the matter. Pursuant to the Order, the SEC made a litany of findings constituting misconduct, $70 million was to be paid in disgorgement and $70 million was to be paid in civil penalties, and a number of remedial initiatives would be instituted.

25. In sum, a total of $140 million was paid in disgorgement and penalties in the NY State and SEC Actions as a result of the wrongful conduct complained of therein. Further a number of costly remedial initiatives were instituted to prevent such future conduct.

26. Notwithstanding the foregoing, Class Members who wish to sell their shares and so cease doing business with Columbia prior to the expiration of six years from purchase have been and will be required to pay a significant CDSC charge.

27. Columbia's breach of contract – its failure to maintain, in the words of Benjamin Cardozo, "the punctilio of an honor most sensitive" – allows Plaintiff and the other members of the Class to decide whether they wish to continue to invest in a tainted company and, if he

wishes, to sell his shares without penalty. Plaintiff and the other members of the Class should not be required to keep their money at risk with an allegedly unethical or dishonest company which has breached its contract with Plaintiff and the other members of the Class.

## COUNT I
### (Breach of Contract)

28. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully stated herein.

29. Defendants agreed to perform investment advisor and management services to Plaintiff and the other members of the Class.

30. Defendants had an implied contractual duty to perform the investment advisor and management services in good faith.

31. Defendants breached its contracts with Plaintiff and all Class members and the implied covenant of good faith and fair dealing in the performance of those contracts, by:

    (a) engaging in various forms of misconduct, including market timing;

    (b) by failing to act in the best interests of the Class B shareholders; and

    (c) by engaging in unfair and deceptive trade practices in the performance of their contractual duties.

32. Defendants' breaches of contract and the implied covenant of good faith and fair dealing were so material as to justify Plaintiff and all class members to terminate the contracts, and render it inequitable for Defendants to collect the Contingent Deferred Sales Charge from Plaintiff and all Class members who elect to withdraw their funds.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff on behalf of himself and the Class prays for judgment as follows:

(i)     Certifying that this action may be maintained as a class action pursuant to the provisions of Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all holders of Columbia Fund Class B shareholders during the Class Period;

(ii)    Designating Plaintiff and Plaintiff's counsel as class representative and class counsel, respectively;

(iii)   Entering Judgment against Defendants and in favor of Plaintiff and the Class on all claims:

(iv)    Requiring Defendants to pay Plaintiff's and each Class member their actual damages;

~~(iv)   Granting Plaintiff and the other members of the Class equitable relief from the~~ Contingent Deferred Sales Charge;

(v)     Requiring Defendants to pay Plaintiff's reasonable attorney's fees and costs of suit; and

(vi)    Such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all such issues that are triable before a jury.

Dated: March 21, 2005

GILMAN AND PASTOR, LLP

BY: _____

David Pastor (BBO #391000)
John C. Martland (BBO #322980)
999 Broadway, Suite 500
Saugus, MA 01906
Tel.: (781) 231-7850
Fax: (781) 231-7840

RABIN & PECKEL LLP
275 Madison Avenue
Suite 420
New York, NY 10016
Tel.: (212) 880-3722

GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Tel.: (310) 201-9150

ATTORNEYS FOR PLAINTIFF

GILMAN AND PASTOR, LLP

ATTORNEYS AT LAW

STONEHILL CORPORATE CENTER

999 BROADWAY, SUITE 500

SAUGUS, MASSACHUSETTS 01906

TELEPHONE: 781/231-7850

FACSIMILE: 781/231-7840

WWW.GILMANPASTOR.COM

March 21, 2005

LEGAL DEPARTMENT

RECEIVED

MAR 25 2005

S.F. HEADQUARTERS
BANK OF AMERICA, N.A.

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Columbia Funds
Attn: Christopher L. Wilson
One Financial Center
Boston, MA 02111

## DEMAND FOR RELIEF PURSUANT TO M.G.L., CHAPTER 93A, § 9(3)

Dear Mr. Wilson:

We represent Dean Delaventura, individually and as a representative of a class of all persons similarly situated, as defined below. This is a written demand for relief pursuant to Massachusetts General Laws, Chapter 93A, §9(3).

## CLAIMANTS AND THE CLASS:

Dean Delavenutra ("Claimant") makes this demand on behalf of himself and a class comprised of all holders of Class B shares of Columbia mutual funds as of February 24, 2004 which are still subject to a Contingent Deferred Sales Charge ("CDSC") being assessed in the event they redeem such shares prior to the expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after February 24, 2004 (the "Class").

Claimant Dean Delaventura was a holder of 126.582 shares of Columbia Fund B shares issued by Columbia as of February 24, 2004. In the event that Claimant seeks to redeem his Class B shares of Columbia Fund B shares after February 24, 2004 and prior to six years from his purchase of these shares, he will be assessed a subject to a Contingent Deferred Sales Charge ("CDSC") for early redemption of these shares.

00004411.WPD ; 1

Columbia Funds
March 21, 2005
Page 2

Columbia Acorn Trust, Columbia Funds Trust I, Columbia Funds Trust II, Columbia Funds Trust III, Columbia Funds Trust IV, Columbia Funds Trust V, Columbia Funds Trust VI, Columbia Funds Trust VII, Columbia Funds Trust VIII, Columbia Funds Trust XI (collectively "Columbia") are open-end registered investment companies organized under the laws of the Commonwealth of Massachusetts as business trusts. Columbia maintains its principal executive offices at One Financial Center, Boston, Suffolk County, MA 02111. Columbia is the registrant under the Securities Act of 1933 and Investment Company Act of 1940. Columbia has approximately 140 mutual funds which have as many as seven classes of shares (A, B, C, D, G, T and Z) for each fund. Columbia funds were the subject of improper market timing, including the Columbia Growth Stock Fund.(collectively, "Columbia" ) are open-end registered investment companies organized under the laws of the Commonwealth of Massachusetts as business trusts. MFS maintains its principal executive offices at 500 Boylston Street, Boston, MA 02116. MFS is the registrant under the Securities Act of 1933 and Investment Company Act of 1940. MFS has approximately 140 mutual funds which have as many as several classes of shares (A, B, C, R1, R2, 529A, 529B and 529C) for each fund.

## UNFAIR OR DECEPTIVE ACTS OR PRACTICES:

Columbia (hereinafter "Respondent") have engaged in unfair or deceptive acts or practices including, but not limited to, the following:

The Columbia Funds were subject to improper market timing. Market timing is an investment strategy that involves the short-term trading of securities to take advantage of market fluctuations. Market timing is often employed where one can predict with reasonable certainty the effect on a particular security. Market timing works to the detriment of long-term shareholders in a number of ways: (a) market timing dilutes the value of the fund by allowing the timer to siphon short term profits from what is otherwise a long-term investment vehicle; (b) market timing may add to the transactional costs of the fund because of more frequent purchases and sales; (c) the fund may realize taxable capital gains at an undesirable time; and (d) market timing may result in managers having to sell stock into a falling market.

Respondent represented that the interests of Columbia Funds shareholders was its highest priority. Columbia contracted, agreed, represented and warranted that it would conduct its business at the highest level of integrity while purchasers of Columbia Funds B shares held those shares. However, Columbia violated its agreement by engaging in various forms of misconduct, including market timing, which indicated, among other things, that the interests of the fund shareholders was not the highest priority, that they did not act in good faith, that they engaged in unfair business practices, and that their integrity was seriously compromised. Columbia has been the subject to a series of investigations by federal and state regulators.

Columbia Funds
March 21, 2005
Page 3

On February 24, 2004, the Attorney General of the State of New York announced the filings of civil charges in New York Supreme Court (the "NY State Action) against Columbia "for engaging in a massive mutual fund timing scheme." On February 24, 2004, the SEC announced that it had filed a civil fraud complaint in the United States District Court for the District of Massachusetts (the "SEC Action") against Columbia. On February 9, 2005, Columbia settled charges with the SEC. In connection therewith, the SEC filed an Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order settling the matter. Pursuant to the Order, the SEC made a litany of findings constituting misconduct, $70 million was to be paid in disgorgement and $70 million was to be paid in civil penalties, and a number of remedial initiatives would be instituted. In sum, a total of $140 million was paid in disgorgement and penalties in the NY State and the SEC Actions as a result of the wrongful conduct complained of herein. Further a number of costly remedial initiatives were instituted to prevent such future conduct.

The conduct of Respondents described herein is also the subject of a Complaint, with Claimant named as representative plaintiff, filed in the Suffolk County Superior Court (copy attached hereto). The allegations of the Complaint, which contain a more detailed description of Respondents' misconduct, are incorporated herein by reference.

Respondent's conduct, as described herein, was willfully and knowingly in violation of Massachusetts General Laws, Chapter 93A, §2.

**INJURIES SUFFERED:**

Claimant, as well as the other members of the Class, have been injured as a result of Respondent's use or employment of unfair or deceptive acts or practices in that Claimant and the proposed Class have either (a) incurred actual damages in the amount of the CDSC fees assessed to their accounts when they redeemed their Columbia Class B shares after February 24, 2004; or (b) will incur actual damages in the amount of the CDSC fees assessed to their accounts in the event they redeem their Columbia Class B shares after February 24, 2004 and prior to the expiration of the six year period from the date of purchase of the Class B shares. The aggregate amount of these damages cannot be determined without reference to Respondent's records. Further, depending on the amount and susceptibility to proof of actual damages, Class members are entitled to recover statutory damages in the sum of $25.00 for each class member. *See Leardi v. Brown*, 394 Mass. 151, 163-164, 474 N.E.2d 1094, 1103-1104 (1985).

Columbia Funds
March 21, 2005
Page 4


**DEMAND FOR RELIEF:**

Claimant, on behalf of himself and all others similarly situated, demands that Respondent:

1.    Compensate Claimant and those Class members who redeemed their Class B shares after February 24, 2004 for the actual damages, namely the amount of the CDSC fee assessed, incurred by them or pay statutory damages of $25.00 for each class member pursuant to c. 93A, § 9(3), whichever results in a greater recovery for each individual class member;

2.    Expressly waive the implementation of all CDSC fees arising from the redemption of Class B Shares by Claimant and all those Class Members who held Class B shares as of February 24, 2004;

3.    Reimburse Claimant and Class members for their reasonable attorneys fees and expenses incurred in bringing this claim.

Please be advised that Respondents have thirty (30) days to make a reasonable offer of relief. If Respondents fail to make a reasonable offer to Claimant and the Class, Claimant will file a claim under Chapter 93A on behalf of themselves and the Class seeking damages, injunctive relief and attorneys' fees. You are advised that if the Court determines that Respondents' conduct was willfully or knowingly unfair or deceptive, the Court must award the Claimant and the Class up to three times, but not less than two times, their actual damages.


Very truly yours,


John C. Martland


cc:    RABIN & PECKEL LLP
       GLANCY BINKOW & GOLDBERG LLP


00004411.WPD ; 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _Dean Delaventura v. Columbia Acorn Trust, et al._

_____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1))

[ ]    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

[✓]    II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

[ ]    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

[ ]    IV.   220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

[ ]    V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   None
   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                        YES [ ]        NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                                        YES [ ]        NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                        YES [ ]        NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                        YES [ ]        NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                        YES [✓]        NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division    [✓]       Central Division    [ ]        Western Division    [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division    [ ]       Central Division    [ ]        Western Division    [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                        YES [ ]        NO [✓]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   Brian Pastuszenski, Esq.

ADDRESS   Goodwin Procter LLP, Exchange Place, Boston, MA  02109

TELEPHONE NO.   617-570-1000

(CategoryForm.wpd - 2/15/05)

LIBA/1531516.1
JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DEAN DELAVENTURA

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John C. Martland
Gilman & Pastor, LLP
Stonehill Corporate Center, 999 Broadway, Suite 500
Saugus, MA 01908  Tel  (781) 231-7851

## DEFENDANTS

COLUMBIA ACORN TRUST, ET AL,

County of Residence of First Listed Defendant __**Suffolk**__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Brian E. Pastuszenski
Goodwin Procter LLP
Exchange Place, Boston, MA 02109
Tel: (617) 570-8202

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
    Plaintiff

☐ 2 U.S. Government
    Defendant

☒ 3 Federal Question
    ( U.S. Government Not a
    Party)

☐ 4 Diversity
    (Indicate Citizenship of
    Parties in Item III

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for
(For Diversity Cases Only)                      Plaintiff and One Box for Defendant)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place and "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Over-
    payment & Enforce-
    ment of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted
    Student Loans
    (Excl. Veterans)
☐ 153 Recovery of Overpay-
    ment of Veteran's
    Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Lia-
    bility
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product
    Liability
☐ 320 Assault, Libel &
    Slander
☐ 330 Federal Employers'
    Liability
☐ 340 Marine
☐ 345 Marine Product
    Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product
    Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury—Med.
    Malpractice
☐ 365 Personal Injury—
    Product Liability
☐ 368 Asbestos Personal
    Inury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal
    Property Damage
☐ 385 Property Damage
    Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accom-
    modations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities –
    Employment
☐ 446 Amer. w/Disabilities -
    Other
☐ 440 Other Civil Rights

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of
    Property 21 USC
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational
    Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/M gmt. Relations
☐ 730 Labor/Mgment.
    Reporting & Disclosure
    Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security
    Act

### PRISONER PETITIONS
☐ 510 Motions to Vacate
    Sentences
    **Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 535 Prison Condition

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395 ff)
☐ 862 Black Lung (923)
☐ 863 DIW C/DIW W (405 (g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAXSUITS
☐ 870 Taxes (U.S. Plaintiff or
    Defendant)
☐ 871 IRS—Third Party
    26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC
    Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced
    and Corrupt
    Organization
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☒ 850 Securities/Commod-
    ities/Exchange
☐ 875 Customer Challenge 12
    USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization
    Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information
    Act
☐ 900 Appeal of Fee Deter-
    mination
    Under Equal Access to
    Justice
☐ 950 Constitutionality of State
    Statutes

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original
    Proceeding
☒ 2 Removed from
    State Court
☐ 3 Remanded from
    Appellate Court
☐ 4 Reinstated or
    Reopened
☐ 5 Transferred from
    another district
    (specify)
☐ 6 Multidistrict
    Litigation
☐ 7 Appeal to District
    Judge from
    Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1441
Brief description of cause:
Securities litigation in breach of contract claim.

## VII. REQUESTED IN COMPLAINT
☐ CHECK IF THIS IS A CLASS ACTION
    UNDER F.R.C.P. 23

DEMANDS

CHECK YES only if demanded in complaint
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S)
IF ANY  None.  (See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE  4/20/15

SIGNATURE OF ATTORNEY OF RECORD
Brian C. Pastuszenski

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____