**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

### SUCV2005-01093
### Delaventura v Columbia Acorn Trust et al

*C5-10793 WGY*

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 03/21/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 04/22/2005 | **Session** | G - Civil G | | |
| **Origin** | 1 | **Case Type** | A99 - Misc contract | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 06/19/2005 | **Answer** | 08/18/2005 | **Rule12/19/20** | 08/18/2005 |
| **Rule 15** | 08/18/2005 | **Discovery** | 01/15/2006 | **Rule 56** | 02/14/2006 |
| **Final PTC** | 03/16/2006 | **Disposition** | 05/15/2006 | **Jury Trial** | Yes |

#### PARTIES

**Plaintiff**
Deam Delaventura
Active 03/21/2005

**Private Counsel 391000**
David Pastor
Gilman & Pastor
999 Broadway
Stone Hill Corp Ctr Suite 500
Saugus, MA 01906
Phone: 781-231-7850
Fax: 781-231-7840
Active 03/21/2005 Notify

**Defendant**
Columbia Acorn Trust
Service pending 03/21/2005

**Private Counsel 391030**
Brian E Pastuszenski
Testa Hurwitz & Thibeault
125 High Street
High Street Tower
Boston, MA 02110
Phone: 617-248-7000
Fax: 617-248-7100
Active 04/22/2005 Notify

**Private Counsel 550123**
Kevin McGrath
53 State Street
Boston, MA 02109
Phone: 617-570-1000
Active 04/22/2005 Notify

**Defendant**
Columbia Funds Trust I
Service pending 03/21/2005

**Private Counsel 546767**
Brien T O'Conner
Ropes & Gray
1 International Place
Boston, MA 02110
Phone: 617-951-7000
Fax: 617-951-7050
Active 04/22/2005 Notify

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## SUCV2005-01093
## Delaventura v Columbia Acorn Trust et al

|  |  |
|---|---|
|  | **Private Counsel 658047**<br>Giselle J. Joffre<br>One Internationl Place<br>Boston Mass<br>Boston, MA 02110-2624<br>Phone: 617-951-7000<br>Active 04/22/2005 Notify |
| **Defendant**<br>Columbia Funds Trust II<br>Service pending 03/21/2005 | **Private Counsel 546767**<br>Brien T O'Conner<br>Ropes & Gray<br>1 International Place<br>Boston, MA 02110<br>Phone: 617-951-7000<br>Fax: 617-951-7050<br>Active 04/22/2005 Notify |
|  | **Private Counsel 658047**<br>Giselle J. Joffre<br>One Internationl Place<br>Boston Mass<br>Boston, MA 02110-2624<br>Phone: 617-951-7000<br>Active 04/22/2005 Notify |
| **Defendant**<br>Columbia Funds Trust III<br>Service pending 03/21/2005 | **Private Counsel 546767**<br>Brien T O'Conner<br>Ropes & Gray<br>1 International Place<br>Boston, MA 02110<br>Phone: 617-951-7000<br>Fax: 617-951-7050<br>Active 04/22/2005 Notify |
|  | **Private Counsel 658047**<br>Giselle J. Joffre<br>One Internationl Place<br>Boston Mass<br>Boston, MA 02110-2624<br>Phone: 617-951-7000<br>Active 04/22/2005 Notify |

MAS-20030912                    Case 1:05-cv-10793-WGY     Document 4     Filed 05/03/2005     Page 3 of 6          04/22/2005
guen                                    **Commonwealth of Massachusetts**                                        10:01 AM
                                             **SUFFOLK SUPERIOR COURT**
                                                   **Case Summary**
                                                   **Civil Docket**

### SUCV2005-01093
### Delaventura v Columbia Acorn Trust et al

| | |
|---|---|
| **Defendant**<br>Columbia Fumds Trust IV<br>Service pending 03/21/2005 | **Private Counsel 546767**<br>Brien T O'Conner<br>Ropes & Gray<br>1 International Place<br>Boston, MA 02110<br>Phone: 617-951-7000<br>Fax: 617-951-7050<br>Active 04/22/2005 Notify |
| | **Private Counsel 658047**<br>Giselle J. Joffre<br>One Internationl Place<br>Boston Mass<br>Boston, MA 02110-2624<br>Phone: 617-951-7000<br>Active 04/22/2005 Notify |
| **Defendant**<br>Columbia Funds Trusrt V<br>Service pending 03/21/2005 | **Private Counsel 546767**<br>Brien T O'Conner<br>Ropes & Gray<br>1 International Place<br>Boston, MA 02110<br>Phone: 617-951-7000<br>Fax: 617-951-7050<br>Active 04/22/2005 Notify |
| | **Private Counsel 658047**<br>Giselle J. Joffre<br>One Internationl Place<br>Boston Mass<br>Boston, MA 02110-2624<br>Phone: 617-951-7000<br>Active 04/22/2005 Notify |
| **Defendant**<br>Columbia Funds Trust VI<br>Service pending 03/21/2005 | **Private Counsel 546767**<br>Brien T O'Conner<br>Ropes & Gray<br>1 International Place<br>Boston, MA 02110<br>Phone: 617-951-7000<br>Fax: 617-951-7050<br>Active 04/22/2005 Notify |

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
Case Summary
Civil Docket

## SUCV2005-01093
### Delaventura v Columbia Acorn Trust et al

|  | **Private Counsel 658047**<br>Giselle J. Joffre<br>One Internationl Place<br>Boston Mass<br>Boston, MA 02110-2624<br>Phone: 617-951-7000<br>Active 04/22/2005 Notify |
|---|---|
| **Defendant**<br>Columbia Funds Trust VII<br>Service pending 03/21/2005 | **Private Counsel 546767**<br>Brien T O'Conner<br>Ropes & Gray<br>1 International Place<br>Boston, MA 02110<br>Phone: 617-951-7000<br>Fax: 617-951-7050<br>Active 04/22/2005 Notify |
|  | **Private Counsel 658047**<br>Giselle J. Joffre<br>One Internationl Place<br>Boston Mass<br>Boston, MA 02110-2624<br>Phone: 617-951-7000<br>Active 04/22/2005 Notify |
| **Defendant**<br>Columbia Funds Trusr VIII<br>Service pending 03/21/2005 | **Private Counsel 546767**<br>Brien T O'Conner<br>Ropes & Gray<br>1 International Place<br>Boston, MA 02110<br>Phone: 617-951-7000<br>Fax: 617-951-7050<br>Active 04/22/2005 Notify |
|  | **Private Counsel 658047**<br>Giselle J. Joffre<br>One Internationl Place<br>Boston Mass<br>Boston, MA 02110-2624<br>Phone: 617-951-7000<br>Active 04/22/2005 Notify |

Commonwealth of Massachusetts
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2005-01093
## Delaventura v Columbia Acorn Trust et al

| Defendant | Private Counsel 546767 |
|---|---|
| Columbia Funds Trust XI | Brien T O'Conner |
| Service pending 03/21/2005 | Ropes & Gray |
| | 1 International Place |
| | Boston, MA 02110 |
| | Phone: 617-951-7000 |
| | Fax: 617-951-7050 |
| | Active 04/22/2005 Notify |
| | |
| | **Private Counsel 658047** |
| | Giselle J. Joffre |
| | One Internationl Place |
| | Boston Mass |
| | Boston, MA 02110-2624 |
| | Phone: 617-951-7000 |
| | Active 04/22/2005 Notify |

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 03/21/2005 | 1.0 | Complaint & Jury demand |
| 03/21/2005 | | Origin 1, Type A99, Track F. |
| 03/21/2005 | 2.0 | Civil action cover sheet filed |
| 04/21/2005 | | Certified copy of peition for removal to U. S. Dist.. of Defts |
| | | .Columbia Acorn Trust, Columbia Funds Trust I, Columbia Funds Trust |
| | | II, Columbia Funds Trust III, Columbia Funds Trust IV, Columbia Funds |
| | | Trust V, Columbia Funds Trust VI, Columbia Funds Trust VII, Columbia |
| | | Funds Trust VIII and Columbia Funds Trust XI. U. S. |
| | | Dist.#(05-10793WGY). |
| 04/22/2005 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

I HEREBY ATTEST AND CERTIFY ON

APRIL 25, 2005, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

**CIVIL ACTION COVER SHEET**

DOCKET NO(s) 05-1093

Trial Court of Massachusetts
Superior Court Department
County: SUFFOLK

| | |
|---|---|
| PLAINTIFF(S)<br>DEAN DELAVENTURA | DEFENDANT(S)<br>COLUMBIA ACORN TRUST, ET AL |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>David Pastor, GILMAN AND PASTOR, LLP<br>999 Broadway, Suite 500, Saugus, MA 01906<br>Board of Bar Overseers number: 391000 | ATTORNEY (if known) |

**Origin code and track designation**

Place an x in one box only:
- [XX] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Breach of Good Faith | F) | (X) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .................................................. $............
2. Total Doctor expenses .................................................. $............
3. Total chiropractic expenses ............................................ $............
4. Total physical therapy expenses ....................................... $............
5. Total other expenses (describe) ....................................... $............

Subtotal $............

B. Documented lost wages and compensation to date ........................... $............
C. Documented property damages to date .................................... $............
D. Reasonably anticipated future medical and hospital expenses .............. $............
E. Reasonably anticipated lost wages ...................................... $............
F. Other documented items of damages (describe)

$............

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$............
TOTAL $............

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Class action complaint alleging breach of covenant of good faith and fair dealing. Plaintiff/Class seek to recover/preclude Contingent Deferred Service Charge assessed class members for redemption of Class B Shares after Defendants engaged in Market Timing transactions.    TOTAL $............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _David Past_    DATE: 03/17/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON
APRIL 25, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

---------------------------------------------------------------X

DEAN DELAVENTURA, on behalf of himself and
all others similarly situated

                    Plaintiff,

      v.

COLUMBIA ACORN TRUST, COLUMBIA FUNDS
TRUST I, COLUMBIA FUNDS TRUST II,
COLUMBIA FUNDS TRUST III, COLUMBIA
FUNDS TRUST IV, COLUMBIA FUNDS TRUST V,
COLUMBIA FUNDS TRUST VI, COLUMBIA
FUNDS TRUST VII, COLUMBIA FUNDS TRUST
VIII, COLUMBIA FUNDS TRUST XI,

                  Defendants.

---------------------------------------------------------------X

Case No. 05-1695

**CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, by his undersigned attorneys, on personal knowledge as to himself and his

acts and on information and belief as to all other matters, based upon an investigation by Plaintiff's

counsel, alleges as follows:

**INTRODUCTION**

1.  This is a class action brought on behalf plaintiff and all other holders of Class B

shares of Columbia mutual funds as of February 24, 2004 which are still subject to a Contingent

Deferred Sales Charge ("CDSC") being assessed in the event they redeem such shares prior to the

expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on

or after February 24, 2004.  When a Class B shareholder withdraws money from a particular

Columbia Fund by redeeming shares of that fund, a percentage of the proceeds is charged by

Columbia before the balance is delivered to the shareholder.  Columbia calls this penalty a CDSC.

00004381.WPD ; 1

Typically, the CDSC charge is 5% for withdrawals in the first year after purchase, 4% in the second, 3% in the third or fourth, 2% in the fifth, and 1% in the sixth.

2. This claim is based upon the fact that Columbia through certain of its employees (and agents) engaged in misconduct constituting a breach of contract with holders of Class B shares in a Columbia Fund. Those holders of Class B shares who wish to cease doing business with the Fund may only do so by paying a penalty. In fact, such holders should be given the opportunity to withdraw money from Columbia Funds without a penalty because an implied term of the agreement pursuant to which the investments were made was that Columbia would conduct itself with a high degree of integrity and the fact that Columbia did not so conduct itself amounts to a breach of contract, so that Class B shareholders should have the opportunity to withdraw their funds without penalty. Defendants' misconduct is also a breach of their obligation to act fairly and in good faith with respect to their contract, as well as a breach of their fiduciary duties of care, loyalty, and good faith.

3. The following facts and circumstances alleged below constitute a breach of the agreement, and the covenants of good faith and fair dealing, between defendants and class members in that defendants' actions give rise to serious doubts concerning the integrity of defendants. In particular, (a) the payment of $140 million in disgorgement and penalties; (b) the specificity of the wrongdoing alleged by the governmental agencies; (c) the substantial redemptions by shareholders following the charges being made public; (d) the adverse reporting in the media; (e) the plethora of actions, including class actions, commenced against defendants; (f) the increased outflow of shareholder funds from the defendants, and the decreased inflow of funds to defendants, giving rise to possible adverse consequences for class members, i.e. among other things, increased administrative costs and forced sales of stock to raise money for redemptions.

2

4. Class members should not be forced to perform under an agreement which has been breached by defendants. In particular, class members should be free to decide whether, under the circumstances, they wish to remain shareholders without the disincentive of a penalty if they decide to redeem their shares and shareholders who were penalized for redeeming their shares after the above charges were made public should be refunded the amount of the penalty.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the Defendants Columbia as they have their headquarters and do substantial business in the Commonwealth of Massachusetts.

6. Venue is proper as Defendants Columbia have their principal place of business in Boston, Suffolk County, Massachusetts. The Defendants have, at all times material to this complaint, conducted business in this Commonwealth related to the events giving rise to the claims asserted in this complaint and are registered to do business in the Commonwealth of Massachusetts. Many of the witnesses and a substantial number of the documents and sources of proof are located in Massachusetts.

## PARTIES

7. Plaintiff Dean Delaventura was a holder of 126.582 shares of Columbia Growth Stock Fund B shares issued by Columbia as of February 24, 2004.

8. Defendants Columbia Acorn Trust, Columbia Funds Trust I, Columbia Funds Trust II, Columbia Funds Trust III, Columbia Funds Trust IV, Columbia Funds Trust V, Columbia Funds Trust VI, Columbia Funds Trust VII, Columbia Funds Trust VIII, Columbia Funds Trust XI (collectively "Columbia") are open-end registered investment companies organized under the laws of the Commonwealth of Massachusetts as business trusts. Columbia maintains its principal executive offices at One Financial Center, Boston, Suffolk County, MA

00004381.WPD ; 1                                    3

02111. Columbia is the registrant under the Securities Act of 1933 and Investment Company Act of 1940. Columbia has approximately 140 mutual funds which have as many as seven classes of shares (A, B, C, D, G, T and Z) for each fund. Columbia funds were the subject of improper market timing, including the Columbia Growth Stock Fund.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

9. Plaintiff brings this action as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of himself and other members of the Class, consisting of all holders of Class B Shares of Columbia mutual funds as of February 24, 2004 which are still subject to a CDSC being assessed in the event they redeem such shares prior to the expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after February 24, 2004.

10. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff, and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class. Record owners and members of the Class may be identified from records maintained by Columbia and may be notified of the pendency of this action by mail, using the form of notice similar to that used in class actions.

11. Plaintiff's claims are typical of the claims of the putative Class members. Specifically, Plaintiff claims that Defendants' conduct injured Plaintiff and Class members alike by assessing CDSC fees to all Class members who redeem their shares on or after February 24, 2004.

12. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. The common questions of law and fact include:

(a) Whether defendants has breached its fiduciary duty to Plaintiff and the Class;

(b) Whether defendants has breached its duties of good faith and fair dealing; and

(c) Whether defendants' conduct constitutes a breach of contract.

13. Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class action litigation to vigorously prosecute this action on behalf of the putative class members.

14. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to seek redress individual for the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FACTS

**BACKGROUND**

15. A Mutual Fund is a fund that is managed by an investment company that manages the money of its shareholders.

16. Mutual funds are priced once a day, at 4:00 p.m. EST. The price, known as the Net Asset Value ("NAV"), generally reflects the closing prices of the securities that comprise a given fund's portfolio, plus the value of any cash that the fund manager maintains for the fund, divided by the number of outstanding shares.

17. Market timing is an investment strategy that involves the short-term trading of securities to take advantage of market fluctuations. Market timing is often employed where one can predict with reasonable certainty the effect on a particular security. Market timing works to the detriment of long-term shareholders in a number of ways: (a) market timing dilutes the value of the fund by allowing the timer to siphon short term profits from what is otherwise a long-term investment vehicle; (b) market timing may add to the transactional costs of the fund because of more frequent purchases and sales; (c) the fund may realize taxable capital gains at an undesirable time; and (d) market timing may result in managers having to sell stock into a falling market. Where money is not invested in the fund, but is kept in cash, then the fund's shareholders are deprived of the advantages of being fully invested in an appreciating stock market.

### THE CLASS B SHARES

18. The Columbia Funds claims that the interests of fund shareholders their highest priority. They had a reputation for good faith and fair dealing, and for strict adherence to their duties as a fiduciary: loyalty, candor, and due care which eschews any sort of unfair business practices.

19. Columbia contracted, agreed, represented and warranted that it would continue to conduct its business at the same level of integrity while purchasers of B shares held those shares.

20. Columbia violated its agreement by engaging in various forms of misconduct, including market timing, which indicated, among other things, that the interests of the fund shareholders was not the highest priority, that they did not act in good faith, that they engaged in unfair business practices, and that their integrity was seriously compromised. Under these circumstances, holders of B shares should be allowed to redeem their shares without penalty.

00004381.WPD ; 1                                     6

21. Columbia has been subject to a series of investigations by federal and state regulators.

**Governmental Action**

22. On February 24, 2004, the Attorney General of the State of New York announced the filing of civil charges in New York Supreme Court (the "NY State Action") against Columbia "for engaging in a massive mutual fund timing scheme."

23. On February 24, 2004, the SEC announced that it had filed a civil fraud complaint in the United States District Court for the District of Massachusetts (the "SEC Action") against Columbia.

24. On February 9, 2005, the SEC filed an Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order settling the matter. Pursuant to the Order, the SEC made a litany of findings constituting misconduct, $70 million was to be paid in disgorgement and $70 million was to be paid in civil penalties, and a number of remedial initiatives would be instituted.

25. In sum, a total of $140 million was paid in disgorgement and penalties in the NY State and SEC Actions as a result of the wrongful conduct complained of therein. Further a number of costly remedial initiatives were instituted to prevent such future conduct.

26. Notwithstanding the foregoing, Class Members who wish to sell their shares and so cease doing business with Columbia prior to the expiration of six years from purchase have been and will be required to pay a significant CDSC charge.

27. Columbia's breach of contract – its failure to maintain, in the words of Benjamin Cardozo, "the punctilio of an honor most sensitive" – allows Plaintiff and the other members of the Class to decide whether they wish to continue to invest in a tainted company and, if he

00004381.WPD ; 1                                    7

wishes, to sell his shares without penalty. Plaintiff and the other members of the Class should not be required to keep their money at risk with an allegedly unethical or dishonest company which has breached its contract with Plaintiff and the other members of the Class.

## COUNT I
### (Breach of Contract)

28. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully stated herein.

29. Defendants agreed to perform investment advisor and management services to Plaintiff and the other members of the Class.

30. Defendants had an implied contractual duty to perform the investment advisor and management services in good faith.

31. Defendants breached its contracts with Plaintiff and all Class members and the implied covenant of good faith and fair dealing in the performance of those contracts, by:

(a) engaging in various forms of misconduct, including market timing;

(b) by failing to act in the best interests of the Class B shareholders; and

(c) by engaging in unfair and deceptive trade practices in the performance of their contractual duties.

32. Defendants' breaches of contract and the implied covenant of good faith and fair dealing were so material as to justify Plaintiff and all class members to terminate the contracts, and render it inequitable for Defendants to collect the Contingent Deferred Sales Charge from Plaintiff and all Class members who elect to withdraw their funds.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the Class prays for judgment as follows:

(i)      Certifying that this action may be maintained as a class action pursuant to the provisions of Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all holders of Columbia Fund Class B shareholders during the Class Period;

(ii)      Designating Plaintiff and Plaintiff's counsel as class representative and class counsel, respectively;

(iii)      Entering Judgment against Defendants and in favor of Plaintiff and the Class on all claims:

(iv)      Requiring Defendants to pay Plaintiff's and each Class member their actual damages;

(iv)      Granting Plaintiff and the other members of the Class equitable relief from the Contingent Deferred Sales Charge;

(v)      Requiring Defendants to pay Plaintiff's reasonable attorney's fees and costs of suit; and

(vi)      Such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all such issues that are triable before a jury.

Dated: March 21, 2005

GILMAN AND PASTOR, LLP

BY: _____

David Pastor (BBO #391000)
John C. Martland (BBO #322980)
999 Broadway, Suite 500
Saugus, MA 01906
Tel.: (781) 231-7850
Fax: (781) 231-7840

RABIN & PECKEL LLP
275 Madison Avenue
Suite 420
New York, NY 10016
Tel.: (212) 880-3722

GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Tel.: (310) 201-9150

**ATTORNEYS FOR PLAINTIFF**

I HEREBY ATTEST AND CERTIFY ON
APRIL 25, 2005 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

*Suffolk Superior Civil # 05-1093*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DEAN DELAVENTURA, on behalf of himself and
all others similarly situated

                Plaintiff,

      v.

COLUMBIA ACORN TRUST, COLUMBIA
FUNDS TRUST I, COLUMBIA FUNDS TRUST
II, COLUMBIA FUNDS TRUST III, COLUMBIA
FUNDS TRUST IV, COLUMBIA FUNDS TRUST
V, COLUMBIA FUNDS TRUST VI, COLUMBIA
FUNDS TRUST VII, COLUMBIA FUNDS
TRUST VIII, COLUMBIA FUNDS TRUST XI,

                Defendants.

Case No. _____

MAGISTRATE JUDGE ____

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, the Defendants[1] file this Notice of
Removal. This notice removes the civil action *Dean Delaventura v. Columbia Acorn Trust, et
al.*, C.A. No. 05-1093 (the "Civil Action") filed in the Massachusetts Suffolk County Superior
Court.

As grounds for this removal, the Defendants state as follows:

1.      The Civil Action was filed on March 21, 2005. On or about that date, Plaintiff
mailed a copy of the complaint, together with a letter making a demand on Defendants pursuant
to M.G.L.c. 93A, to the Defendants by certified mail, return receipt requested. A copy of the

---

[1]    The Defendants include Columbia Acorn Trust, Columbia Funds Trust I, Columbia
Funds Trust II, Columbia Funds Trust III, Columbia Funds Trust IV, Columbia Funds
Trust V, Columbia Funds Trust VI, Columbia Funds Trust VII, Columbia Funds Trust
VIII, Columbia Funds Trust XI (collectively, the "Defendants").

Complaint and demand letter are attached as Exhibit A. The Complaint has not been served on any Defendant.

2.     Defendants timely file this notice of removal within the thirty days set forth in 28 U.S.C. § 1446(b).

I.     GROUNDS FOR REMOVAL

3.     This Court has federal jurisdiction over this Civil Action pursuant to 28 U.S.C. § 1331 on two independent grounds.

A.     SLUSA PREEMPTION

4.     This matter raises a federal question under the Securities Litigation Uniform Standard Act of 1998 ("SLUSA"). Under SLUSA, federal courts have exclusive jurisdiction over certain "covered class actions" involving a covered security. 15 U.S.C. § 78bb(f)(2). Plaintiff's state court action is a "covered class action" involving a "covered security."

5.     A "covered class action" may meet either of the following two requirements: (a) "damages are sought on behalf of more than 50 persons or prospective class members" and common questions of law or fact predominate over questions affecting individual persons or class members; or (b) "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated." 15 U.S.C. § 78bb(f)(5)(B)(I) & (II). This action meets each of these requirements. For example, Plaintiff expressly seeks damages on behalf of more than 50 class members. (Complaint, ¶ 10). Plaintiff also purports to represent a putative class of "all others similarly situated." And, Plaintiff alleges that questions of law and fact common to the class predominate over any questions affecting only individual class members. (Complaint, ¶¶ 9-14). For these and other reasons, this action is a covered class action.

6.    This action concerns a "covered security" within the meaning of 15 U.S.C. §

78bb(f)(1). Interests of shareholders in Defendants' Funds are registered with the Securities and

Exchange Commission (the "SEC") as securities under the Securities Act of 1933, and the

Defendants' Funds referred to in the Complaint are registered with the SEC as investment

companies under the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.* As such

Plaintiff's Class B shares are covered securities. Kircher v. Putnam Funds Trust, et al., 2005 WL

757255, *2 (7th Cir. Apr. 5, 2005).

7.    This action is "based upon the statutory or common law of any State." See 15

U.S.C. § 77p(b). The Plaintiff alleges a claim under state law resulting allegedly from unfair or

deceptive conduct. (Complaint, ¶¶ 28-32).

8.    SLUSA requires removal of a "covered class action based upon the statutory or

common law of any State or subdivision thereof…alleging --

> (A)    a misrepresentation or omission of a material fact in
> connection with the purchase or sale of a covered security;
> or
>
> (B)    that the defendant used or employed any manipulative or
> deceptive device or contrivance in connection with the
> purchase or sale of a covered security."

15 U.S.C. § 78bb(f)(1).

9.    Plaintiff's claims are thus subject to mandatory removal under SLUSA.

Plaintiff's claims concern Defendants' alleged misrepresentation or omissions and/or

employment of a manipulative or deceptive device or contrivance in connection with the

purchase or sale of a covered security. Specifically, the allegations relate to market timing and

valuation, and allege that Defendants' conduct was dishonest, unfair and deceptive. See, e.g.,

Complaint, ¶¶ 17, 19 ("Columbia represented and warranted that it would continue to conduct its

business at the same level of integrity"), ¶¶ 20, 27 (Defendants allegedly "dishonest"), ¶ 31(c)

(defendants allegedly "engag[ed] in unfair and deceptive trade practices"). The alleged unfair and deceptive trade practices can only relate to the Funds' statements or omissions in their sales prospectuses regarding market timing. Plaintiff alleges no other unfair or deceptive trade practices. "Artful pleading," in which plaintiffs "disguise[s] a federal claim as a claim arising under state law," cannot defeat removal pursuant to SLUSA -- rather, courts may "look beyond the complaint" to ascertain the true nature of Plaintiff's claim. See Korinsky v. Salomon Smith Barney, Inc., No. 01 Civ. 6085 (SWK), 2002 WL 27775, *2 (S.D.N.Y. Jan. 10, 2002) (denying motion to remand and granting motion to dismiss complaint pursuant to SLUSA).

10.    Plaintiff's claims are "in connection with" the purchase or sale of a covered security. In order for a plaintiff's claims to be "in connection with" the purchase or sale of a security for SLUSA purposes, a plaintiff need only allege an injury as "a result of deceptive practices 'touching' its purchase or sale of securities." Araujo v. John Hancock Life Ins. Co., 206 F.Supp.2d 377, 383 (E.D.N.Y. 2002) (citation omitted). This is precisely what the Complaint alleges. First, Plaintiff here is complaining about misrepresentations in connection with the imposition of a deferred _sales_ charge on "Class Members who wish to _sell_ their shares," who allegedly "have been and will be required to pay a significant CDSC charge" when they sell their shares. Complaint ¶ 26. That sales charge becomes applicable when a Class Member purchases shares in the subject mutual funds, and is triggered and must be paid when those shares are sold within a specific time period. Id. ¶ 1.

11.    In addition, Plaintiff's claims are based on allegations that misrepresentations occurred during the class period in connection with the purchase of those shares. (See, e.g., Complaint ¶¶ 1, 2, 3, 7, 19, 20, 29); see also Dabit v. Merrill Lynch, 395 F.3d 25, 46 (2d. Cir.

2005) (SLUSA applies when stock may have been purchased by any plaintiff after alleged misrepresentations were made).

12.    Plaintiff's description of Class Members as those who "held" shares is irrelevant since the deferred sales charge that Plaintiff challenges becomes applicable upon a Class Member's *purchase* of shares and becomes payable upon the *sale* of those shares. See Complaint ¶ 9; Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1345 (11th Cir. 2002) ("[T]hat class members purchase *and then retain* their Growth Fund shares does not necessarily add anything to the basic claim of purchasing, because all investors, by definition, hold their shares for at least some time after purchase") (emphasis in original); v. Kircher v. Putnam Funds Trust, et al., 2005 WL 757255, *5 (7th Cir. Apr. 5, 2005) ("[P]laintiffs' effort to define non-purchaser-non-seller classes is designed to evade PSLRA in order to litigate a securities class action in state court in the hope that a local judge or jury may produce an idiosyncratic award. It is the very sory of maneuver that SLUSA is designed to prevent."); Cape Ann Investors LLC v. Lepone, 296 F.Supp.2d 4 (D.Mass. 2003).

13.    Plaintiff also alleges that market timing improperly allowed certain investors "to take advantage of market fluctuations" through "short-term trading" practices. (See Complaint, ¶ 17). Claims relating to such trades are, as well, made in connection with the purchase or sale of securities. See Kircher, at *5 (claims based upon alleged misrepresentations and manipulative conduct relating to market timing are in connection with purchase and sale of securities).

B.    PREEMPTION UNDER THE INVESTMENT COMPANY ACT

14.    Plaintiff's claims arise under the Investment Company Act of 1940 ("1940 Act"). That act preempts any state law claims of the nature present here. See 15 U.S.C. § 80a-50.

15.    For example, the Plaintiffs' state law claim raise questions of fair value, and all such questions are governed by the 1940 Act. See 15 U.S.C. § 80a-22. Plaintiff alleges, in part,

that the value of his shares was diluted by market timing; this will necessarily entail a

determination of Net Asset Value under the fair value rules and procedures of the 1940 Act.

Complaint ¶¶ 15-17. The fair value rules and procedures set forth in §§ 2(a)(41) and 22 lie at

the heart of the 1940 Act, and are closely regulated by the SEC. When "Congress...so

completely pre-empt[s] a particular area th[at] any civil complaint raising that select group of

claims is necessarily federal in character," Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-

64 (1987), a state law action can be removed, regardless of how the action is plead. Thus, the

Seventh Circuit recently announced that Sections 201(b) and 202(a) of the Communications Act

completely preempt state law challenges to the validity of the terms and conditions of a

telephone service agreement. See Boomer v. AT&T Corp., 309 F.3d 404, 417-18 (7th Cir. 2002).

Congress' intent to completely preempt state law in this area, the Court found, was evidenced by

the goal of the Communications Act to provide uniform terms and conditions of service; in these

circumstances, "a state law challenge to the validity of the terms and conditions of a telephone

service agreement would result in the application of fifty bodies of law, and this would inevitably

lead to customers in different state receiving different terms and conditions." Id. at 418.

   16.    Sections (2)(a)(41) and 22 of the 1940 Act are no different. Its legislative history

makes clear that the problem of dilution was both significant and national, that the problem was

an important reason for enactment of the 1940 Act, and that the provisions at issue are necessary

to protect less sophisticated parties. See Investment Trusts and Investment Companies: Hearing

before the Senate Subcommittee on Securities and Exchange of the Banking and Currency

Committee, 76th Congress, 121-58 (1940) (statement of David Schenker, Chief Counsel,

Securities and Exchange Commission, Investment Trust Study). Section 22 grants power to a

federal agency -- the SEC -- to "make rules and regulations" to enforce the section. See 15

U.S.C. § 80a-22(c). The SEC has been very active in the arena of regulating the determination

of the value of investment company shares, and in the enforcement of its rules, including rules

respecting the determination of fair value. See, e.g., SEC v. Heartland Advisors, et al., SEC

Litigation Release No 18505 (December 12, 2003). The net asset value requirement must

completely preempt state law as to all questions which can impact on the issue of fair value.

Otherwise, both investors and investment companies will be subject to inconsistent rules across

jurisdictions and the SEC's authority to create uniform standards of valuation would be

destroyed.

17.     The Plaintiff plainly cannot avoid federal jurisdiction through the "artful

pleading" by which he attempts to disguise his federal action in the garb of state law claims. See

BIW Deceived, et al. v. Local S6, Industrial Union of Marine and Shipbuilding Workers of

America, 132 F.3d 824, 829 (1st Cir. 1997) (plaintiff's state law claims dependant upon an

interpretation of a collective bargaining agreement are preempted by federal law). For example,

Plaintiff alleges that Defendants "had an implied contractual duty to perform the investment

advisor and management services in good faith." (Complaint, ¶ 30). This claim certainly

intrudes upon areas governed by the 1940 Act, including the "forward pricing rules" that relate to

the determination of a fund's "NAV", or "Net Asset Value". See Rule 22c-1 of the General

Rules and Regulations under the 1940 Act (the "1940 Act Regulations"). The method for

calculating subaccount values for purposes of such sales and purchases is also set forth and

governed by the 1940 Act and the 1940 Act Regulations. See, e.g., 15 U.S.C. § 80a-22(c); 17

C.F.R. §§ 270.2a-4, 270.22c-1, 270.22e-2. This alleged duty arises solely under Rule 2a-4

promulgated under the 1940 Act, although the Complaint itself does not specifically identify the

source of the duty. Such claims, as well as Plaintiff's other claims relating to the calculation of

net asset value of the funds are 1940 Act claims, notwithstanding Plaintiff's attempt to couch them under state law. A plaintiff cannot avoid federal court by cloaking a federal question in state law claims. See BIW Deceived, 132 F.3d at 829. Removal based upon the federal jurisdiction provided by the 1940 Act is thus proper. See 28 U.S.C. § 1331.

II.    VENUE

18.    Venue is proper in this District under 28 U.S.C. § 1441(a) and 15 U.S.C. § 78bb(f)(2), "Removal of Covered Class Actions," added by SLUSA, because the removed action has been pending in this district. Defendants reserve the right to seek the transfer of this matter to another district.

III.    NOTICE

19.    Defendants will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court Department of the Trial Court, Suffolk County, Commonwealth of Massachusetts, where this action has been pending, and will serve such notice on all adverse parties.

20.    Pursuant to Local Rule 81.1, certified or attested copies of all records, proceedings, and docket entries in the Civil Action will be filed with this Court within 30 days.

21.    By filing this Notice of Removal, the Defendants are not making a general appearance and are not waiving their right to raise any defenses and/or grounds for dismissal pursuant to Fed.R.Civ.P. 12, or otherwise, including without limitation inadequacy of service of process or personal jurisdiction.

WHEREFORE, the Defendants respectfully request that the Civil Action be removed to the United States District Court for the District of Massachusetts on the foregoing grounds.

Dated: April 20, 2005

_Brian E. Pastuszenski_

Brian E. Pastuszenski, BBO # 391030
Kevin P. McGrath, BBO # 550123
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000
*Attorneys for Defendant Columbia Acorn Trust*

_Giselle Joffre_

Brien T. O'Connor, BBO # 546767
Giselle J. Joffre, BBO # 658047
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000
*Attorney for Defendants Columbia Funds Trust I,
Columbia Funds Trust II, Columbia Funds Trust
III, Columbia Funds Trust IV, Columbia Funds
Trust V, Columbia Funds Trust VI, Columbia Funds
Trust VII, Columbia Funds Trust VIII, Columbia
Funds Trust XI*

LIBA/1531563.1

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 4/20/05

_Brian E. Pastuszenski_

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT DEPARTMENT
                                               OF THE TRIAL COURT

```
                                            )
DEAN DELAVENTURA, on behalf of himself and  )
all others similarly situated               )
                                            )   Case No. 05-1093
            Plaintiff,                       )
                                            )
     v.                                     )
                                            )
COLUMBIA ACORN TRUST, COLUMBIA              )
FUNDS TRUST I, COLUMBIA FUNDS TRUST         )
II, COLUMBIA FUNDS TRUST III, COLUMBIA      )
FUNDS TRUST IV, COLUMBIA FUNDS TRUST        )
V, COLUMBIA FUNDS TRUST VI, COLUMBIA        )
FUNDS TRUST VII, COLUMBIA FUNDS             )
TRUST VIII, COLUMBIA FUNDS TRUST XI,        )
                                            )
            Defendants.                      )
```

## NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(d), Defendants Columbia Acorn Trust, Columbia Funds

Trust I, Columbia Funds Trust II, Columbia Funds Trust III, Columbia Funds Trust IV,

Columbia Funds Trust V, Columbia Funds Trust VI, Columbia Funds Trust VII, Columbia

Funds Trust VIII and Columbia Funds Trust XI hereby give notice to the Superior Court of

Suffolk County, and the attorney for plaintiff Dean Delaventura, that, on April 20, 2005, the

aforementioned Defendants filed a Notice of Removal, thereby removing this action to the

United States District Court for the District of Massachusetts. A certified copy of the Notice of

Removal is attached to this Notice.

_(signature)_

Brian E. Pastuszenski, BBO #391030
Kevin P. McGrath, BBO #550123
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000
_Attorneys for Defendant Columbia Acorn Trust_

_(signature)_

Brien T. O'Connor, BBO #546767
Giselle J. Joffre, BBO #658047
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000
_Attorney for Defendants Columbia Funds Trust I,
Columbia Funds Trust II, Columbia Funds Trust
III, Columbia Funds Trust IV, Columbia Funds
Trust V, Columbia Funds Trust VI, Columbia Funds
Trust VII, Columbia Funds Trust VIII, Columbia
Funds Trust XI_

Dated: April 21, 2005

LIBA/1531828.1

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of
the above document was served upon the
attorney(s) of record for each other
party by mail/hand on _March 21, 2005_.

_(signature)_