UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DEAN DELAVENTURA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-10793-WGY |
| | ) |
| COLUMBIA ACORN TRUST, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendants submit this Supplemental Memorandum in further support of their opposition to remand.

**A.  Plaintiff's Claim Alleges Misrepresentations In Connection With The Purchase And Sale Of Securities**

Plaintiff's attempt to avoid SLUSA by bringing a breach of contract claim rather than a fraud claim, see Reply Memorandum at p. 2-3, is unavailing. SLUSA was aimed at stopping suits that rely on artful drafting to camouflage federal securities claims as state law claims. Courts necessarily look behind the state law labels to the substance of claims to determine whether the essence of a plaintiff's claims are what Congress intended to preempt. See Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 34 (2d Cir. 2005).

Plaintiff's complaint patently makes fraud and misrepresentation claims, which fall within the ambit of SLUSA. Central to Plaintiff's theory is the allegation that Defendants "represented and warranted" the level of integrity at which Defendants would conduct their business. See Compl. ¶ 19. It is this alleged misrepresentation, "pursuant to which [Plaintiff's] investments were made," which forms the basis for his theory of recovery. See Compl. ¶ 2.

Moreover, Plaintiff repeatedly incorporates by reference the allegations of wrongdoing found in the complaint filed by the Securities and Exchange Commission. See Compl. ¶¶ 3, 22-24. The SEC complaint, filed on February 24, 2004, a date which directly corresponds to Plaintiff's class period, alleges a series of misrepresentations, omissions, and deceptive acts in Defendants' prospectuses. See SEC Action ¶¶ 71, 94-95.

When analyzing whether SLUSA preemption applies, a court must examine the gravamen of the complaint, rather than how it has been pleaded. As the Second Circuit held in Dabit, "[u]nder SLUSA, then, we must look beyond the face of the complaint to analyze the substance of the allegations made." Id. at 34; accord Rowinski v. Salomon Smith Barney, 398 F.3d 294, 304 (3d Cir. 2005); Dudek v. Prudential Securities, Inc., 295 F.3d 875, 879 (8th Cir. 2002); In re: Worldcom, Inc., 263 F. Supp. 2d 745, 769 (S.D.N.Y. 2003); Korsinsky v. Salomon Smith Barney Inc., 2002 WL 27775, *3 (S.D.N.Y. Jan. 10, 2002); Feitelberg v. Merrill Lynch & Co., Inc., 234 F.Supp. 2d 1043, 1048 (N.D.Cal. 2002).

The issue therefore is not whether Plaintiff has brought a fraud or misrepresentation claim; it is whether Plaintiff has alleged misrepresentations or omissions in connection with purchases and sales of a covered security. As described above, Plaintiff here has done precisely that: he alleges that Defendants impliedly promised potential investors that Defendants would not encourage or permit market timing when, in fact, they were doing just that.

Plaintiff has attempted "the very sort of maneuver that SLUSA is designed to prevent," Kircher at 484, by fashioning a state law securities claim to evade the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995. Congress entrusted the courts, particularly federal courts, with the responsibility to dismiss such class actions at the pleading stage.

### B. A Putative Class Limited To Holders Does Not Exclude Purchasers Or Sellers

Plaintiff's argument that he evades SLUSA because he purports to limit his claim to "holders" is similarly irrelevant. The substantial development of appellate SLUSA case law over the past three years makes clear that merely alleging that a suit is brought on behalf of "holders" does not circumvent SLUSA. Although this Circuit has not addressed the issue, the Second, Third, Seventh, Eighth, Ninth and Eleventh Circuits have held that allegations on behalf of a class of holders are preempted by SLUSA. See, e.g., Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 44 (2d Cir. 2005); accord Rowinski v. Salomon Smith Barney, 398 F.3d 294, 303-304 (3d Cir. 2005); Kircher v. Putnam Funds Trust, 403 F.3d 478, 482 (7th Cir. 2005); Professional Management Assocs., Inc. v. KPMG, 335 F.3d 800, 803 (8th Cir. 2003); Feitelberg v. Merrill Lynch & Co., 353 F.3d 765 (9th Cir. 2003); Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1345 (11th Cir. 2002). Plaintiff does not, and cannot, distinguish these decisions by all six Courts of Appeals that have addressed the question. His suggestion, in his reply, that In re Alger, 320 F. Supp. 2d 352 (D. Md. 2004) is the only authority he must distinguish is mistaken. In re Alger is simply *another* decision Plaintiff cannot distinguish from the case at bar.

Plaintiff's description of the class as "holders" does not expressly exclude those who purchased *and* held; indeed, his description necessarily includes purchasers. Plaintiff purports to represent a class of shareholders who would be subject to the Contingent Deferred Sales Charge ("CDSC") in February 2004. Reply Memorandum at p. 2. That class must have invested after February 1998 (the earliest date on which the six year CDSC period could have commenced). Because the alleged market-timing commenced as early as the beginning of 1998, any prospectuses issued after this point allegedly misrepresented the funds' integrity. Compl.

¶¶ 3(b), 22-27.  Therefore, this class necessarily includes individuals who bought in reliance on prospectuses that Plaintiff alleges failed to warn them about market-timing or the funds' alleged complicity.

Indeed, given the massive turnover which occurs in each fund every day, a class of shareholders who held on February 24, 2004, necessarily includes members who purchased *on that date*, as well as earlier, in reliance on the allegedly deficient prospectuses.  See Kircher v. Putnam Funds Trust, 403 F.3d 478, 482 (7th Cir. 2005) (noting that due to the "substantial daily turnover" a "class of 'all holders' during even a single day contains many purchasers and sellers").

Thus, Plaintiff's putative class of "holders" includes those who purchased during the class period as well as those who only held during the class period.  Simply defining the putative class as "holders" without expressly excluding purchasers and sellers does not avoid preemption.  As the Seventh Circuit held in Kircher, reviewing a similarly-defined class, "[a]s an effort to evade SLUSA, this class definition is a flop."  Kircher, 403 F.3d at 482.

### C. Kircher and Alger Also Provide A Second, Independent Basis For Finding SLUSA Preemption Here.

Here, as in Kircher and Alger, the purchase and sale of the funds' securities by the market timers is alleged to be part of a scheme which harmed the Plaintiff and putative class, and therefore constitutes an alternative potential basis for liability under federal securities law.  In his reply, Plaintiff criticizes Judge Motz's view, expressed in Alger, "that the fraud alleged in connection with the purchase and sale does not need to be in connection with the purchase or sale of securities by *plaintiff* but can involve purchase or sale of securities by anyone."  Reply Memorandum at p. 3.  What Plaintiff refers to as a "radical change in securities jurisprudence" is Judge Motz's view that, for purposes of SLUSA, a claim satisfies Rule 10b-5's "in connection

with the purchase or sale" requirement if it is "coincident" with the purchase and sale. Reply Memorandum at p. 3.

This "radical change" uses language from a Supreme Court decision from 2002, SEC v. Zandford, 535 U.S. 813, 822 ("It is enough that the scheme to defraud and the sale of securities coincide."). The Seventh Circuit expressly found that SLUSA preemption does not require that the purchases or sales of securities be by plaintiffs in Kircher. Its decision recognized and was consistent with the line of United States Supreme Court decisions interpreting Section 10(b) of the Securities Exchange Act of 1934, on which this SLUSA language is based. Although some circuits have stated in *dicta* that purchases or sales of securities by *non-plaintiffs* cannot satisfy SLUSA's "in connection with" requirement, and at least one circuit has expressly reserved judgment on the question, the only Court of Appeals to actually *decide* the question, the Seventh Circuit, determined that allegations of misconduct in connection with purchases or sales of securities by non-plaintiffs are preempted by SLUSA. Kircher, 403 F.3d at 483-84*;* see also In re: Alger Mutual Fund Litigation, 320 F.Supp. 2d 352, 355-56 (D. Md. 2004).[1]

Indeed, Congress used the "in connection with" language because it was well understood in securities law as a defining phrase in Section 10(b) and Rule 10b-5.[2] It is well-settled that the scope of the "in connection with" language is the same in Rule 10b-5 and SLUSA. See Kircher v. Putnam Funds Trust, 403 F.3d 478, 482 (7th Cir. 2005); Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 34-36 (2d Cir. 2005); Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 299 (3d Cir. 2005); Green, 279 F.3d at 596-97; Falkowski v. Imation Corp.,

---

[1]   But see Dabit, 395 F.3d at 43-44; Riley, 292 F.3d at 1343-45; Green v. Ameritrade, 279 F.3d 590, 598 (8th Cir. 2002); see generally Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 304 n9 (3d Cir. 2005) (noting cases and reserving judgment).

[2]   Like SLUSA, Section 10(b) applies to actions which are "in connection with the purchase or sale of any security."

309 F.3d 1123, 1131 (9th Cir. 2002), amended, 320 F.3d 905 (2003); Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1342-43 (11th Cir. 2002).

The issue, therefore, is whether the purchaser-seller rule, as announced by the Supreme Court in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975), applies to SLUSA at all. Relying on Blue Chip Stamps itself and the Supreme Court's post-Blue Chip Stamps opinions, the Court in Kircher stated that the purchaser-seller rule is a judicially created limitation on private actions which "does not restrict coverage of the statute and regulation." Kircher, 403 F.3d at 483 (citing Blue Chip Stamps, United States v. O'Hagan, 521 U.S. 642, 664 (1997); Holmes v. SIPC, 503 U.S. 258, 284 (1992); United States v. Naftalin, 441 U.S. 768, 774 n. 6 (1979)). Therefore, "[b]y depicting their classes as containing entirely non-traders, plaintiffs do not take their claims outside § 10(b) and Rule 10b-5; instead they demonstrate only that the claims must be left to public enforcement." Id. at 484.

When viewed in this context, the analysis in Kircher and Alger clearly provides an alternative basis for holding that the statute's "in connection with" requirement is satisfied. Plaintiff alleges, either expressly or by reference, that his claims arise from Defendants' conduct in facilitating market timing and failing to disclose these transactions, which caused injury to Plaintiff. As Kircher noted, "[i]t would be more than a little strange if the Supreme Court's decision to block private litigation by non-traders became the opening by which that very litigation could be pursued under state law, despite the judgment of Congress (reflected in SLUSA) that securities class actions must proceed under federal securities law or not at all." Id.

SLUSA's borrowing of the "in connection with" language, without further limitation, and Congress's legislative purpose to impose uniform federal rules on securities fraud class actions, demonstrates Congress's intention to reach – and preempt – state law causes of action involving

misrepresentations or manipulative conduct in connection with *anyone*'s securities transactions. See Kircher, 403 F.3d at 483-84.  While Defendants' alleged misconduct here is connected to the Plaintiff's and putative class members' own purchases of securities as demonstrated above, the alleged misconduct is, in addition, connected to the purchases and sales of securities by market-timers.  On each of these independent grounds, the allegations here come within the reach of SLUSA.

## CONCLUSION

For the reasons set forth above, as well as those set forth in Defendants' Opposition to Motion to Remand, the motion to remand should be denied.

Dated:  July 20, 2005

/s/ Brien T. O' Connor_____
Brien T. O'Connor, BBO # 546767
Giselle J. Joffre, BBO # 658047
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

*Attorneys for Defendants Columbia Funds Trust I, Columbia Funds Trust II, Columbia Funds Trust III, Columbia Funds Trust IV, Columbia Funds Trust V, Columbia Funds Trust VI, Columbia Funds Trust VII, Columbia Funds Trust VIII, Columbia Funds Trust XI*

/s/ Kevin P. McGrath_____
Brian E. Pastuszenski, BBO # 391030
Kevin P. McGrath, BBO # 550123
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

*Attorneys for Defendant Columbia Acorn Trust*



ROPES & GRAY LLP
ONE INTERNATIONAL PLACE    BOSTON, MA 02110-2624    617-951-7000    F 617-951-7050
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

July 20, 2005

Giselle J. Joffre
(617) 951-7789
giselle.joffre@ropesgray.com

**VIA E-FILING**

Ms. Elizabeth Smith
Court Clerk to Honorable William G. Young
U.S. District Court for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA  02210

      Re:    <u>Delaventura v. Columbia Acorn Trust, et al.</u>, No. 05-10793 (WGY)

Dear Ms. Smith:

Pursuant to Judge Young's permission given at oral argument on June 14, 2005, Defendants in the above-captioned case hereby file electronically a Supplemental Memorandum in Opposition to Plaintiff's Motion to Remand.

Please feel free to contact me with any questions.

Very truly yours,

*Giselle Joffre*

Giselle J. Joffre

Attachments

9775978_1